Daniel T. Hayward, Esq.
Nevada State Bar No. 5986
BRADLEY, DRENDEL & JEANNEY
P.O. Box 1987
Reno, NV 89505
Telephone No. (775) 335-9999
Facsimile No. (775) 335-9993
*Attorney for Plaintiff*

-and-

J. Christopher Albanese (NY Bar No. 3986163)
*Will comply with LR IA 11-2 within 30 days*
M. Dinora Smith (NY Bar No. 5588306)
*Will comply with LR IA 11-2 within 30 days*
WHITE, HILFERTY & ALBANESE, PC
800 3rd Ave., Suite 2800
New York, New York 10022
T: (917) 932 - 2694; F: (646) 690 - 8897
cja@nycjobattorney.com
dsmith@nycjobattorney.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FRED COLEMAN, | Case No. _____ |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | **PLAINTIFF DEMANDS A TRIAL BY JURY** |
| BARRICK GOLDSTRIKE MINES, INC. | |
| Defendant. | |
| _____/ | |

Plaintiff Fred Coleman ("Mr. Coleman"), by and through his attorneys, J. Christopher Albanese and M. Dinora Smith of White, Hilferty & Albanese and Daniel T. Hayward of Bradley, Drendel & Jeanney, hereby complains of Defendant, upon information and belief as follows:

## NATURE OF THE CASE

1.  Plaintiff brings this action alleging that Defendant has violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. and Nevada Revised Statutes § 613 *et seq*. and seeks damages to redress the injuries he has suffered as a result of being Discriminated

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906                                                -1-

Against on the Basis of his Age and Retaliated Against for his Engagement in Protected Activity.

## JURISDICTION & VENUE

2.   Jurisdiction of this Court is proper under 29 U.S.C. § 621 *et seq*. and 28 U.S.C. §§ 1331 and 1343.

3.   The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5.   On January 2, 2018, Mr. Coleman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 550-2018-00301, ("First Charge").

6.   On May 9, 2018, Mr. Coleman filed an Amended Complaint to his First Charge.

7.   On September 8, 2019, Mr. Coleman filed a charge of discrimination and retaliation with the EEOC, Charge No. 550-2019-01792, ("Second Charge").

8.   On October 27, 2020, the EEOC issued Dismissal and Notice of Rights letters for both the First and Second Charge.

9.   Mr. Coleman has filed this complaint within 90 days of issuance of these letters.

## THE PARTIES

10.   Plaintiff FRED COLEMAN was and is a resident of Elko County, Nevada. Mr. Coleman is over the age of forty. Mr. Coleman engaged in protected activity by filing two complaints of discrimination with the EEOC, an internal complaint of discrimination and retaliation in February 2018, and repeatedly verbally complained of age discrimination to his supervisors and Human Resources representatives.

11.   Defendant BARRICK GOLDSTRIKE MINES, INC. ("Defendant"), operates the Goldstrike

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-2-

1     mine in located in Elko, Nevada. At all times relevant, Defendant owned, operated, and/or

2     maintained its place of business in Elko County, Nevada.

**MATERIAL FACTS**

12.    Defendant hired Mr. Coleman on February 5, 2010 as a Haul Truck Driver. Mr. Coleman's
date of birth is June 1, 1943.

13.    Defendant mercilessly subjected Mr. Coleman to an extremely discriminatory company
culture due to his age. Mr. Coleman's colleagues, along with Respondent's management
team, routinely singled Mr. Coleman out, mocked him, and harassed him on a daily basis due
to his age. Such acts were so severe that multiple colleagues noticed and took note.

14.    During a meeting in 2017, General Manager Bill MacNevin commented during a meeting
that there were a lot of "old people" working for Defendants and where he comes from "we
get rid of old people."

15.    Throughout 2017, Defendant attempted to flood Mr. Coleman's file with baseless reprimands
to justify his future termination due to a discriminatory animus towards his age. Defendant
either could not produce any evidence to show Mr. Coleman was at fault for the events
underlying these reprimands, or, the employees at fault were younger than Mr. Coleman and
failed to be subjected to the same discipline or adverse treatment as Mr. Coleman.

16.    Beginning in June 2017, Defendant began to target various older employees, including Mr.
Coleman, either terminating them or creating a work environment so inhospitable it forced
their resignation.

17.    For example, on June 8, 2017, Defendant accused Mr. Coleman of running over a chock
block four days prior. Defendant's investigation report itself indicated that it found "no
evidence" to indicate Mr. Coleman was at fault, but concluded the only feasible explanation
for the accident would be that Mr. Coleman was at fault. Defendant generated this report due
to an incorrect assumption. Mr. Coleman refused to sign the reprimand because he was not
guilty of running over the chock block. Supervisor Rod Theisen took Mr. Coleman aside and
indicated he would suspend Mr. Coleman should he refuse to sign the reprimand. Mr.

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-3-

| | | |
|---|---|---|
| 1 | | Coleman agreed to sign it but indicated it was under duress. Mr. Coleman lost one-third of |
| 2 | | his bonus as a result. |
| 3 | 18. | On June 15, 2017, Supervisor Steve Thuringer asked Mr. Coleman, "when are you going to |
| 4 | | retire?" |
| 5 | 19. | Again, on June 18, 2017, Thuringer asked Mr. Coleman, "when are you going to retire?" |
| 6 | 20. | Again, on July 2, 2017, Thuringer, in an unfriendly tone, asked Mr. Coleman, "when are you |
| 7 | | going to retire?" |
| 8 | 21. | On July 4, 2017, colleague Jeff Otten told Mr. Coleman that Barrick supervisors stated that |
| 9 | | they intended to get rid of older employees and hire "younger more vigorous employees." |
| 10 | 22. | On July 6, 2017, Mr. Coleman informed Human Resources representatives Joannie Jarvis |
| 11 | | and Holly Saucier he was routinely bullied due to his age. Mr. Coleman represented to both |
| 12 | | employees that he was experiencing age discrimination; both employees denied this fact, |
| 13 | | simply stating, "no, it is not." Both employees proceeded to ask when Mr. Coleman was |
| 14 | | going to retire. |
| 15 | 23. | On August 19, 2017, Thuringer asked Mr. Coleman on the bus to work again, "when are you |
| 16 | | going to retire…and you need to retire." |
| 17 | 24. | On August 20, 2017, Defendant, specifically the cohort of Thuringer, Dispatcher Serena |
| 18 | | Anthony, and Supervisor Trent Campbell, attempted to claim Mr. Coleman was incorrectly |
| 19 | | dumping ore; Mr. Coleman was correctly dumping waste. Defendant was attempting to |
| 20 | | generate grounds for Mr. Coleman's termination due to his age, as reflected by Thuringer's |
| 21 | | commentary. |
| 22 | 25. | On September 29, 2017, Defendant issued a Decision-Making Leave Date ("DLMD"), |
| 23 | | constituting a final warning, against Mr. Coleman. |
| 24 | 26. | On October 7, 2017, Thuringer threatened Mr. Coleman, stating "I will get you and you |
| 25 | | better remember it." |
| 26 | 27. | On October 8, 2017, management made Mr. Coleman drive his truck with a three-foot hole |
| 27 | | in the headache rack above his cab where large boulders are loaded. Management stated it |
| 28 | | was safe for driving; in fact, it was quite dangerous. Defendant was launching its attempts |

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-4-

1    to force Mr. Coleman's resignation by subjecting him to physical danger motivated by a

2    discriminatory animus towards his age.

3    28.    On October 10, 2017, Mr. Coleman was placed on short term disability and FLMA until

4    January 1, 2018 due to a diagnosis of severe anxiety caused by his hostile work environment.

5    29.    On January 2, 2018, Mr. Coleman filed his First Charge.

6    30.    On January 5, 2018, Mr. Coleman returned to work. Theisen gave Mr. Coleman an

7    evaluation on the first date of his return and baselessly downgraded his evaluation of Mr.

8    Coleman as a result. Downgrading his evaluation negatively impacted Mr. Coleman's

9    employment opportunities within Defendant's company. Mr. Coleman indicated to Theisen

10    he wanted training on a dozer. Theisen indicated younger employees were being trained and

11    Mr. Coleman would be trained after them. Through May 2018, Mr. Coleman was passed over

12    for training in lieu of younger new hires.

13    31.    On January 5, 2018, Equipment Operator Billy Calvert walked up to Mr. Coleman and called

14    him "old man."

15    32.    On January 6, 2018, Wilber Greer commented he heard Thuringer say Mr. Coleman "needs

16    to retire."

17    33.    On January 16, 2018, Mr. Coleman complained about the age discrimination during his

18    appeal meeting to Human Resources representatives Sherry Murphy and Julius. They refused

19    to file a report, as usual, and took no further action. Defendant's employees routinely refused

20    to accept Mr. Coleman's complaints and dismissed them aggressively.

21    34.    On January 27, 2018, two of Mr. Coleman's colleagues coordinated to file a false

22    'Recognize, Report & Resolve Card' ("3R") against Mr. Coleman alleging that he had unsafe

23    driving practices.  Specifically, Jason Brinkerhoff ("Brinkerhoff") and Tzena Venckus

24    ("Venckus") alleged that Mr. Coleman drove his vehicle through an intersection at high

25    speeds without yielding or otherwise verifying that it was safe to do so.  Following these

26    allegations, Respondent suspended Mr. Coleman without pay, which caused him to lose both

27    his salary and a substantial amount of overtime pay. Defendant eventually granted Mr.

28    Coleman his base salary but refused to provide the lost overtime.

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-5-

35. On January 29, 2018, Defendant suspended Mr. Coleman to investigate the matter.

36. Following its investigation, including video exonerating Mr. Coleman of any wrongdoing, Respondent was unable to corroborate Brinkerhoff's and Venckus' 3R allegations against Mr. Coleman and thus cleared him of any fault or wrongdoing. It was known amongst Defendant's employees that Mr. Coleman routinely lodged age discrimination complaints. Upon information and belief, Brinkerhoff and Venckus knew of management's intentions to force Mr. Coleman to resign or otherwise terminate him due to his age and engagement in protected activity. Brinkerhoff and Venckus engaged in this false report to generate pretextual performance deficiencies against Mr. Coleman to curry favor with management. Defendant used this knowingly false report to retaliate against Mr. Coleman. Despite Barrick policy against filing false reports, neither Brinkerhoff nor Venckus underwent any disciplinary measures for their false allegations against Mr. Coleman. Mr. Coleman, however, never received remuneration for his missed days of work. The false 3R report occurred less than one month after Mr. Coleman's initial EEOC charge.

37. On January 31, 2018, Defendant, specifically Theisen, Manager Jim Yaunick, and Human Resources employee Nick Nelsen, met with Mr. Coleman to discuss the dismissed charges. Mr. Coleman verbally raised that he felt discriminated against due to his age, that these charges were raised due to a discriminatory animus towards his age, and that employees were constantly asking him when he would retire. All three employees vehemently denied Mr. Coleman was experiencing age discrimination.

38. On February 6, 2018, Thuringer stated "you should have come down to me, I would have beat the shit out of you."

39. On February 13, 2018, Wolf provided Mr. Coleman a stellar review of his work. Wolf had been monitoring Mr. Coleman without his knowledge for approximately six months, including video-taping Mr. Coleman, before and after his return from short term disability leave.

40. On or about February 20, 2018, Mr. Coleman submitted a complaint of retaliation to Nelsen and Yaunick, dated February 17, 2018. In his statement, Mr. Coleman discussed not only

1    Venckus' discriminatory and retaliatory treatment of him, but also articulated the fact that

2    he was subjected to different treatment by Barrick management as compared to younger

3    employees.  Such act constituted a protected activity and, unfortunately, merely stoked

4    Respondent's retaliatory animus against Mr. Coleman.

5  41.   On February 22, 2018, Mr. Coleman's supervisors unfairly downgraded his evaluations to

6    the worst he had received in 25 years of working in the mines. Contrary to Wolf's evaluation,

7    which was laudatory, these evaluations were motivated by agism and retaliatory animus for

8    Mr. Coleman filing his First Charge and retaliation complaint.

9  42.   On February 25, 2018, Thuringer again stated to Mr. Coleman, "you need to retire, when are

10    you going to retire?"

11  43.   On or about March 16, 2018, Mr. Coleman's wife Lawona Coleman ("Mrs. Coleman"),

12    while in Respondent's waiting room, was engaged in conversation with colleague Roger

13    while at work.  Another colleague, Manny Trujilo ("Trujilo") joined their conversation, and

14    the topic soon turned to retirement.  While Roger and Trujilo, who were both younger than

15    Mr. Coleman, discussed the number of years that they needed to work before retiring, Trujilo

16    suddenly began discussing Mr. Coleman in a disgusted voice, stating "Yeah, we have a guy

17    on our crew, I think he is 72, and he just won't retire."  Trujilo's speech was obviously

18    geared toward Mr. Coleman, as they worked on the same crew and Mr. Coleman was the

19    only individual around that age on their crew.

20  44.   Though Trujilo knew that Mrs. Coleman and Mr. Coleman were married, he did not

21    recognize her, as she recently changed her hair color. Mrs. Coleman sat in silence, listening

22    to Trujilo blather on, before asking, "are you talking about Fred Coleman?" Trujilo asked

23    Mrs. Coleman how she knew he was talking about Mr. Coleman, before asking her why Mr.

24    Coleman did not retire.  Realizing that he was speaking to Mr. Coleman's wife, Trujilo

25    departed shortly thereafter.

26  45.   In another instance, colleague Juan Ulloa ("Ulloa") noted multiple instances in which

27    Respondent—including a number of Mr. Coleman's supervisors—openly mocked Mr.

28

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-7-

1    Coleman on the basis of his age. Ulloa was approximately 41 years old at the time. Many

2    of Mr. Coleman's colleagues openly displayed their ageist animus against Mr. Coleman in

3    the workplace and were encouraged by their supervisors to do so. Shockingly, Ulloa's

4    account includes an instance in which Defendant contemplated unjustly failing Mr. Coleman

5    for a training course that he successfully repeated due to his age, specifically stating that he

6    was "too slow." Ulloa's statement clearly illustrates the ageist animus against Mr. Coleman.

7    46.  On April 1, 2018, Theisen indicated that Defendant would prioritize training younger

8    employees and not train older employees.

9    47.  On April 3, 2018, Mr. Coleman was threatened by Thuringer on the bus to work. Thuringer

10   stated, "Remember this, I am going to get you and don't you forget it." Mr. Coleman knew

11   Thuringer was an avid recreational gun user and took this as a serious threat.

12   48.  On April 11, 2018, Haulpack Driver Shelly from "D" crew asked Mr. Coleman what his age

13   was because "everyone was betting on" his age and she wanted to win the bet.

14   49.  On April 27, 2018, Mr. Coleman submitted a written report of Thuringer's threat to Yaunick.

15   50.  On April 28, 2018, Defendant trained Haulpack Driver Dave Richardson on a Dozer.

16   Richardson was much younger than Mr. Coleman. Defendant routinely passed over older

17   employees for equipment training.

18   51.  On June 22, 2018, Dozer Trainer Rick Rogers took Mr. Coleman to the Carlin Stock pile;

19   Mr. Coleman was finally receiving Dozer training. Mr. Coleman received four days of dozer

20   training total. Mr. Coleman had worked a Dozer at another mine for about eight years

21   previously and showed proficiency on a Dozer for that reason. Mr. Coleman generally

22   received positive remarks from another supervisor (not Rogers) and several Haul truck

23   drivers about his Dozer work.

24   52.  On one of these days, Rogers directed Mr. Coleman to get into the van to begin training. Mr.

25   Coleman was left sitting in the van for a long period of time; later, Rogers and Bernie got

26   into the van. Upon entering, Rogers turned to Mr. Coleman and said, "What are you doing

27   Fred, fucking off?" Rogers and Bernie laughed. Mr. Coleman responded "no, I'm not f'ing

28   off." Rogers degraded Mr. Coleman in front of others due to a discriminatory animus towards

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906                                    -8-

his age. Bernie later told Rogers to "fail [Mr. Coleman]" on dozer training because "he is too old." Defendant failed Mr. Coleman on the Dozer based upon a discriminatory animus towards his age.

53.   During his training, without instruction, Rogers told Mr. Coleman simply to break down the stock pile. Mr. Coleman would have had to climb a 20-foot vertical pile straight up and climb another pile 50 to 60 feet up to knock it down. There were 5 or 6 vehicles sitting and watching Mr. Coleman; no other trainee or younger employee was forced to work for hours with an audience. Mr. Coleman built a ramp to knock the pile down. Rogers confirmed Mr. Coleman was building a ramp, then ordered him out of the vehicle to sit in the van. Mr. Coleman obliged and Rogers used his ramp to knock down the pile. Rogers never let Mr. Coleman work on the pile again. Defendants did this in order to force Mr. Coleman towards retirement or resignation, as evidenced by the repeated discriminatory comments made regarding Mr. Coleman's age.

54.   On his second day of training, Mr. Coleman approached Rogers and asked if he had been instructed to fail Mr. Coleman. Mr. Coleman asked Rogers directly twice; Rogers finally answered, "I am caught between a rock and a hard place." Mr. Coleman interpreted this comment to mean Rogers was directed to fail him on the Dozer based upon a retaliatory animus towards Mr. Coleman after filing his First Charge.

55.   Effective January 1, 2019, Mark Bristow became President and Chief Executive Officer for Defendant. Bristow openly made ageist comments in the press openly touting the benefits of hiring younger employees, including: "you need to have people who [. . .] have the energy"; "I think this industry is an aging industry"; "we've got to bring in young people"; "We are not getting there in Barrick"; "Young people are important in being able to introduce that sort of agility [. . .] a 55-year-old engineer doesn't do automation that easily [. . .] a 30-year old, he or she is not scared of it—and we've seen that"; "We haven't got a good safety record, and a lot of that is because people are actually not in a physical condition to look after themselves [. . .] how can you want to come and work and drive big trucks and do heavy engineering work when you can't even help yourself up the stairs?"; "we need to

Our File No. 204906

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

1    get in front and attract those very bright young people into our organization"; and "we've got

2    too many out of shape people working in our organization." See, Exhibit "A." Bristow's

3    ageist sentiments were implemented soon after he began working for Defendant. Defendant

4    displayed ageist sentiments by terminating older employees routinely, or, by making their

5    work environments so inhospitable it would force them to quit.

6    56.   On June 27, 2019, Theisen commented to Mr. Coleman that Bristow had met with

7          management. Bristow had stated Defendant employed "too many old people" and directed

8          management to "get rid" of employees "40 years and older." This directive occurred, notably,

9          one month prior to Mr. Coleman's termination.

10   57.   On or about July 12, 2019, Safety Chairman Gary Kump ("Kump") singled Mr. Coleman out

11         during a Crew C-line meeting (C-line was Mr. Coleman's crew), falsely stating that Mr.

12         Coleman "broke-down by shovel 192 last night and did not put his chock blocks down on

13         his tires." After making this false statement, Kump continued to ridicule and demean Mr.

14         Coleman in front of the whole crew. Supervisor Tony Daniels was present during Kump's

15         unwarranted tirade against Mr. Coleman, but did not make an effort to stem or stop Kump's

16         behavior. As such, Mr. Coleman interjected on his own behalf, stating "I am tired of being

17         singled out for ridicule before the whole crew, creating a hostile environment for me to have

18         to work in with false allegations." Given the color of Mr. Coleman's past EEOC charge and

19         associated complaints, it was clear that Mr. Coleman was articulating a complaint of

20         disparate treatment due to his age. Thus, Mr. Coleman opposed discrimination in this

21         instance, and his response was protected activity.

22   58.   Following the incident, Mr. Coleman spoke with Daniels and requested a meeting with

23         Yaunick to discuss his (Mr. Coleman's) experiences of harassment and disparate treatment

24         in the workplace. Daniels told Mr. Coleman that Yaunick was out of office until July 19,

25         2019, but that he (Daniels) would arrange a meeting.

26   59.   On July 15, 2019, Defendant alleged that Mr. Coleman committed a safety violation by

27         failing to lock or place a chock block to secure his haul truck.

28

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-10-

60.     On or about July 19, 2019, Mr. Coleman attended his requested meeting with Yaunick. Daniels was also present, along with Theisen, Supervisor Wilbur Greer ("Greer") and Mine Superintendent Ron Hager ("Hager"). Mr. Coleman briefly discussed his complaints about Kump's behavior on or about July 12, 2019. Daniels, however, quickly coopted the meeting by accusing Mr. Coleman of failing to set chock blocks around his truck on or about July 15, 2019. Such allegations were wholly false; Mr. Coleman, as he had done in his nearly 20-year career, always followed proper safety regulations with respect to driving his vehicle. Contrary to Respondent's statements, Mr. Coleman spent an entirety of approximately 30 seconds cleaning his truck lights, and never "became upset and dismissed the fuel attendant's advice" to chock his truck. In fact, the fuel attendant never requested that Mr. Coleman "re-chock and lock" his truck; rather, the attendant merely asked Mr. Coleman whether he had done so, to which Mr. Coleman replied that he had.

61.     Hager continued the meeting by making veiled threats against Mr. Coleman, stating that he had "just terminated some people down in the mill," and "there sure are a lot of chock blocks being run over." Hager's statements in this instance were thinly-veiled statements of intent regarding Respondent's impending termination of Mr. Coleman.

62.     On or about July 23, 2019, HR employee Lisa Chamberlain ("Chamberlain") called and informed Mr. Coleman that Respondent elected to place him on administrative leave while they investigated the allegations against him, i.e., that Mr. Coleman did not properly set chock blocks while at the fuel bay.

63.     During his time on administrative leave, Mr. Coleman learned from colleague Dave Manley ("Manley") that a Haulpak (i.e., a type of vehicle) driver slid into a bank and destroyed the font left side of his Haulpak, as well as a ladder. Manley further told Mr. Coleman that the day after Respondent placed Mr. Coleman on administrative leave, Haulpak driver Kim Curtis ("Curtis") ran over two chock blocks at the fuel bay. Even further, Manley relayed that yet another Haulpak driver came too close to another piece of equipment and nearly hit it. All of the events that Manley disclosed to Mr. Coleman were terminable offenses. However, upon information and belief, none of the employees involved were placed on

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-11-

1    administrative leave as Mr. Coleman had been. The only difference between Mr. Coleman

2    and these employees was age, along with past protected activities. Each of these employees

3    was younger than Mr. Coleman.

64.   Furthermore, immediately prior to his placement on administrative leave, Mr. Coleman filed

5    a 3R report against Kump for a dangerous near-miss situation, in which Kump was at fault.

6    Theisen possessed knowledge of the incident prior to Mr. Coleman's report but did not take

7    any action against Kump.  Upon information and belief, Theisen did not take any action

8    against Kump even after Mr. Coleman filed the 3R report. Such acts clearly demonstrate the

9    difference in treatment between Mr. Coleman and other colleagues, in that Mr. Coleman

10    received discipline at significantly higher rates as compared to them.

65.   On July 31, 2019, Defendant terminated Mr. Coleman, allegedly due to vague "undesirable

12    behaviors." Defendant held an in-person meeting to terminate Mr. Coleman's employment.

13    Theisen, Yaunick, Lindskog, and Chamberlain were present.  Mr. Coleman's daughter, Dawn

14    Heath ("Heath"), accompanied Mr. Coleman to the meeting to act as his witness.  Though

15    Respondent initially attempted to deny Heath access to the meeting, they eventually relented

16    and allowed her to sit in. When Mr. Coleman attempted to read a statement regarding his

17    experience at Barrick, Lindskog became extremely irate and began yelling at Mr. Coleman.

66.   For years after his termination, Mr. Coleman was blackballed by Defendants from working

19    at any other gold mine in the Elko area. Mr. Coleman interviewed for several jobs and was

20    considered a serious candidate until potential employers learned he had been terminated by

21    Defendants.

67.   As mentioned, throughout Mr. Coleman's employment, Defendant terminated or forced

23    various older employees to retire. These employees, all over the age of forty at the time of

24    their terminations, include:

25      a.      Gayle McCoy, Mechanic, approximately 61 at the time of his termination, who hurt

26              his knee on the job. After reporting his injury, he was terminated and replaced with

27              a younger employee.

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-12-

b.  Juan Ulloa, Haul Truck Driver, approximately 41 years of age at the time of termination. Ulloa was injured on the job. Ulloa received a OWCP physician's evaluation indicating he was ready to return to work. Defendants suspended his employment. Two weeks later, Defendant terminated him for alleged "undesirable behavior." Defendant did not provide Ulloa the opportunity to return to work, instead terminating Ulloa.

c.  Leroy Bitton, who was over the age of forty at the time of his termination.

d.  Mike Pope/Rupe, who was in his 50s at the time of his termination.

e.  Gary Manning, who was over the age of forty at the time of his termination.

f.  Another older woman over the age of forty who was singled out and harassed so constantly that Mr. Coleman would often find her crying. She eventually resigned but never raised claims of discrimination for fear of being blackballed by Defendants.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 29 U.S.C. §623)

68.  Mr. Coleman repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

69.  Defendant's discrimination concerned one of the activities protected by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623.

70.  The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, in relevant part states, "(a) Employer practices: It shall be unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-13-

| | | |
|---|---|---|
| 1 | | chapter. b) It shall be unlawful for an employment agency to fail or |
| 2 | | refuse to refer for employment, or otherwise to discriminate |
| 3 | | against, any individual because of such individual's age, or to |
| 4 | | classify or refer for employment any individual on the basis of such |
| 5 | | individual's age. |
| 6 | 71. | Mr. Coleman is a member of a protected class pursuant to the Age Discrimination |
| 7 | | in Employment Act. Mr. Coleman was born in 1943; he was over the age of forty |
| 8 | | for all relevant adverse action taken by Defendant underlying this complaint. |
| 9 | 72. | Mr. Coleman possessed proper qualifications for Defendant to continue his |
| 10 | | employment, as evidenced by his 25 years of experience and positive performance |
| 11 | | evaluations. |
| 12 | 73. | Defendant subjected Mr. Coleman to adverse action in the form of failure to train |
| 13 | | him on Dozer equipment, a hostile work environment replete with ageist |
| 14 | | commentary and pressure to retire, and wrongful termination. |
| 15 | 74. | Defendant and/or its agents evinced a motivation of age discrimination in the |
| 16 | | adverse action taken against him by generating pretextual reprimands against him |
| 17 | | in the midst of growing commentary that Defendant was forcing out older |
| 18 | | employees, subjecting him to discriminatory ageist commentary in the workplace, |
| 19 | | repeatedly pressuring him to retire, and wrongfully terminating him when he |
| 20 | | failed to do so. |
| 21 | 75. | Defendant evinced a pattern of forcing older employees to retire or otherwise |
| 22 | | terminating their employment beginning in mid-2017, including Mr. Coleman. |
| 23 | | These efforts were increased two-fold after the placement of Bristow as CEO in |
| 24 | | January 2019. |
| 25 | 76. | Defendant subjected Mr. Coleman to disparate treatment in the manner of his |
| 26 | | employment by training younger employees for dozer work while repeatedly |
| 27 | | passing him over, subjecting him to baseless reprimands, and terminating his |
| 28 | | employment. Defendant did not subject similarly situated younger employees to |

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-14-

1    these adverse actions. Mr. Coleman is aware of multiple younger employees who

2    engaged in similar activity, namely running over chock-blocks, that were neither

3    reprimanded nor terminated as he was for the same alleged indiscretion.

4    77.   As a direct and proximate result of Defendant's unlawful and discriminatory

5          conduct in violation of 29 U.S.C. §623, Mr. Coleman suffered and continues to

6          suffer mental anguish and emotional distress, including but not limited to

7          humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

8          confidence, emotional pain and suffering, for which he is entitled to an award of

9          monetary damages and other relief.

10   **SECOND CAUSE OF ACTION AGAINST DEFENDANT**
     **(RETALIATION IN VIOLATION OF 29 U.S.C. §623)**

11

12   78.   Mr. Coleman repeats, reiterates, and realleges each and every allegation made in

13         the above paragraphs of this Complaint as if more fully set forth herein at length.

14   79.   Defendant's retaliation concerned activities protected by The Age Discrimination

          in Employment Act of 1967, 29 U.S.C. § 623.

15

16   80.   The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, in relevant

17         part states, "(d) Opposition to unlawful practices; participation in investigations,

18         proceedings, or litigation: It shall be unlawful for an employer to discriminate

19         against any of his employees or applicants for employment . . . because such

20         individual, member or applicant for membership has opposed any practice made

21         unlawful by this section, or because such individual, member or applicant for

22         membership has made a charge, testified, assisted, or participated in any manner

23         in an investigation, proceeding, or litigation under this chapter.

24   81.   Defendant engaged in an unlawful practice by retaliating against Mr. Coleman due

          to his engagement in protected activity.

25

26   82.   Mr. Coleman engaged in a protected activity by filing a complaint with the Equal

27         Employment Opportunity Commission in January 2018. Mr. Coleman also made

28         multiple verbal  complaints of discrimination throughout 2018 and 2019, which

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-15-

1   Defendant routinely dismissed.

2   83.   Defendant was aware of Mr. Coleman's complaint as evidenced by its response to
3         his First Charge.

4   84.   Defendant took adverse action against Mr. Coleman, including downgrading his
5         positive reviews, refusing to train him on a dozer or otherwise training him on a
6         dozer in a way which undermined and ridiculed him, subjected him to unsafe
7         working conditions, issuing pretextual reprimands against him, and eventually
8         terminating his employment.

9   85.   Defendant and its agents evinced a retaliatory animus against Mr. Coleman based
10        upon temporal proximity. Mr. Coleman's First Charge was filed in January 2018
11        and repeated   age discrimination complaints in the workplace occurred through
12        2018 and 2019, including but not limited to meetings held in late January 2018
13        and mid-July 2019 with both direct supervisors and Human Resources personnel.
14        These employees refused to accept his complaints. Mr. Coleman experienced
15        downgraded reviews within two months of the filing of his First charge.
16        Defendant repeatedly passed over Mr. Coleman for dozer training through May
17        2018. When he received four days of training in June 2018, less than any younger
18        employee trained on these machines; he was humiliated and rejected for training
19        again afterwards. This training took place within six months of Mr. Coleman's
20        First Charge. Mr. Coleman's First Charge remained under investigation through
21        the date of his termination, July 31, 2019. The temporal proximity between these
22        events indicates Defendant's discriminatory animus towards Mr. Coleman.

23  86.   Defendant and its agents evinced a retaliatory animus against Mr. Coleman also
24        by subjecting him to disparate treatment by issuing baseless pretextual reprimands
25        against him and terminating his employment. Defendant did not subject similarly
26        situated employees who never engaged in protected activity to these adverse
27        actions. Mr. Coleman is aware of multiple younger employees who engaged in
28        similar activity, namely running over chock-blocks, that were neither reprimanded

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906                              -16-

1    nor terminated as he was for the same alleged indiscretion.

2    87.   As a direct and proximate result of Defendant's unlawful and discriminatory

3          conduct in violation of 29 U.S.C. §623, Mr. Coleman suffered and continues to

4          suffer mental anguish and emotional distress, including but not limited to

5          humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

6          confidence, emotional pain and suffering, for which he is entitled to an award of

7          monetary damages and other relief.

8                       **THIRD CAUSE OF ACTION AGAINST DEFENDANT**
                 **(DISCRIMINATION IN VIOLATION OF NV Rev Stat §613.330)**
9
10   88.   Mr. Coleman repeats and realleges each and every paragraph above as if said

11         paragraphs were more fully set forth herein at length.

12   89.   Defendant's discrimination concerned one of the activities protected by the

13         Nevada Revised Statutes § 613.330.

14   90.   The Nevada Revised Statutes § 613.330, in relevant part states, "1. Except as

15         otherwise provided in NRS 613.350, it is an unlawful employment practice for an

16         employer:

17         a.    To fail or refuse to hire or to discharge any person, or otherwise to

18         discriminate against any person with respect to the person s compensation, terms,

19         conditions or privileges of employment, because of his or her race, color, religion,

20         sex, sexual orientation, gender identity or expression, age, disability or national

21         origin; or

22         b.    To limit, segregate or classify an employee in a way which would deprive

23         or tend to deprive the employee of employment opportunities or otherwise

24         adversely affect his or her status as an employee, because of his or her race, color,

25         religion, sex, sexual orientation, gender identity or expression, age, disability or

26         national origin."

27   91.   Mr. Coleman is a member of a protected class pursuant to the NV Rev. State. §

28         613.330. Mr. Coleman was born in 1943; he was over the age of forty for all

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-17-

1    relevant adverse action taken by Defendant underlying this complaint.

2    92.   Mr. Coleman possessed proper qualifications for Defendant to continue his

3          employment, as evidenced by his 25 years of experience and positive performance

4          evaluations.

5    93.   Defendant subjected Mr. Coleman to adverse action in the form of failure to train

6          him on Dozer equipment, a hostile work environment replete with ageist

7          commentary and pressure to retire, and wrongful termination.

8    94.   Defendant and/or its agents evinced a motivation of age discrimination in the

9          adverse action taken against him by generating pretextual reprimands against him

10         in the midst of growing commentary that Defendant was forcing out older

11         employees, subjecting him to discriminatory ageist commentary in the workplace,

12         repeatedly pressuring him to retire, and wrongfully terminating him when he

13         failed to do so.

14   95.   Defendant evinced a pattern of forcing older employees to retire or otherwise

15         terminating their employment beginning in mid-2017, including Mr. Coleman.

16         These efforts were increased two-fold after the placement of Bristow as CEO in

17         January 2019.

18   96.   Defendant subjected Mr. Coleman to disparate treatment in the manner of his

19         employment by training younger employees for dozer work while repeatedly

20         passing him over, subjecting him to baseless reprimands, and terminating his

21         employment. Defendant did not subject similarly situated younger employees to

22         these adverse actions. Mr. Coleman is aware of multiple younger employees who

23         engaged in similar activity, namely running over chock-blocks, that were neither

24         reprimanded nor terminated as he was for the same alleged indiscretion.

25   97.   As a direct and proximate result of Defendant's unlawful and discriminatory

26         conduct in violation of NV Rev. State. §613.330, Mr. Coleman suffered and

27         continues to suffer mental anguish and emotional distress, including but not

28         limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-18-

1   self-confidence, emotional pain and suffering, for which he is entitled to an award

2   of monetary damages and other relief.

3   **FOURTH CAUSE OF ACTION AGAINST DEFENDANT**
    **(RETALIATION IN VIOLATION OF NV Rev. State. § 613.340)**

4

5   98.   Mr. Coleman repeats, reiterates, and realleges each and every allegation made in

    the above paragraphs of this Complaint as if more fully set forth herein at length.

6

7   99.   Defendant's retaliation concerned activities protected by the Nevada Revised

    Statutes § 613.340.

8

9   100.  In relevant part, NV Rev. State. § 613.340 states, "1. It is an unlawful employment

10        practice for an employer to discriminate against any of his or her employees or

11        applicants for employment, for an employment agency to discriminate against any

12        person, or for a labor organization to discriminate against any member thereof or

13        applicant for membership, because the employee, applicant, person or member, as

14        applicable, has opposed any practice made an unlawful employment practice by

15        NRS 613.310 to 613.435, inclusive, or because he or she has made a charge,

16        testified, assisted or participated in any manner in an investigation, proceeding or

17        hearing under NRS 613.310 to 613.435, inclusive."

18  101.  Defendant engaged in an unlawful practice by retaliating against Mr. Coleman due

    to his engagement in protected activity.

19

20  102.  Mr. Coleman engaged in a protected activity by filing a complaint with the Equal

21        Employment Opportunity Commission in January 2018. Mr. Coleman also

22        complained verbally multiple times of discrimination throughout 2018 and 2019,

23        which Defendant routinely dismissed.

24  103.  Defendant was aware of Mr. Coleman's complaint as evidenced by its response to

    his First Charge.

25

26  104.  Defendant took adverse action against Mr. Coleman, including downgrading his

27        positive reviews, refusing to train him on a dozer or otherwise training him on a

28        dozer in a way which undermined and ridiculed him, subjected him to unsafe

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-19-

1    working conditions, issuing pretextual reprimands against him, and eventually

2    terminating his employment.

3  105.  Defendant and its agents evinced a retaliatory animus against Mr. Coleman based

4    upon temporal proximity. Mr. Coleman's First Charge was filed in January 2018

5    and repeated age discrimination complaints in the workplace occurred through

6    2018 and 2019, including but not limited to meetings held in late January 2018

7    and mid-July 2019 with both direct supervisors and Human Resources personnel.

8    These employees refused to accept his complaints. Mr. Coleman experienced

9    downgraded reviews within two months of the filing of his First charge.

10    Defendant repeatedly passed over Mr. Coleman for dozer training through May

11    2018. When he received four days of training in June 2018, less than any younger

12    employee trained on these machines; he was humiliated and rejected for training

13    again afterwards. This training took place within six months of Mr. Coleman's

14    First Charge. Mr. Coleman's First Charge remained under investigation through

15    the date of his termination, July 31, 2019. The temporal proximity between these

16    events indicates Defendant's discriminatory animus towards Mr. Coleman.

17  106.  Defendant and its agents evinced a retaliatory animus against Mr. Coleman also

18    by subjecting him to disparate treatment by issuing baseless pretextual reprimands

19    against him and terminating his employment. Defendant did not subject similarly

20    situated employees who never engaged in protected activity to these adverse

21    actions. Mr. Coleman is aware of multiple younger employees who engaged in

22    similar activity, namely running over chock-blocks, that were neither reprimanded

23    nor terminated as he was for the same alleged indiscretion.

24  107.  As a direct and proximate result of Defendant's unlawful and discriminatory

25    conduct in violation of NV Rev. State. § 613.340, Mr. Coleman suffered and

26    continues to suffer mental anguish and emotional distress, including but not

27    limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and

28    self-confidence, emotional pain and suffering, for which he is entitled to an award

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906                                    -20-

of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.   Declaring that Defendant engaged in unlawful employment practices prohibited by The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 *et seq.* and Nevada Revised Statutes § 613 *et seq.* by discriminating against Mr. Coleman on the basis of age, as well as retaliated against him for engagement in protected activity;

B.   Awarding damages to the Plaintiff, resulting from Defendant's hostile work environment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999

Our File No. 204906

-21-

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated this 28th day of December, 2020.

BRADLEY, DRENDEL & JEANNEY


_/s/ Daniel T. Hayward_
Daniel T. Hayward (NV Bar No. 5986)
P.O. Box 1987
Reno, Nevada 89505

-and-

WHITE, HILFERTY & ALBANESE

By:
J. Christopher Albanese (NY Bar No. 3986163)
_Will comply with LR IA 11-2 within 30 days_
M. Dinora Smith (NY Bar No. 5588306))
_Will comply with LR IA 11-2 within 30 days_
800 Third Avenue, Suite 2800
New York, New York 10022
**_Attorneys for Plaintiff_**

**LAW OFFICE OF
BRADLEY, DRENDEL
& JEANNEY
P.O. BOX 1987
RENO, NV 89505
(775) 335-9999**

Our File No. 204906

-22-

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
------------------------------------------------------------X          Case No.:

FRED COLEMAN,
                                                                                 **VERIFICATION**

                Plaintiff,

      -against-

BARRICK GOLDSTRIKE MINES, INC.,

                Defendant.
------------------------------------------------------------X

      FRED COLEMAN, pursuant to the provisions of 28 U.S.C. § 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1.  I am the Plaintiff herein.

2.  I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.


Executed :    New York, New York
                November 6, 2020

                                            Fred Coleman